All right, let's give it a go. I see Mr. Caffarelli and Ms. Hines. So Mr. Caffarelli, you may proceed. May it please the court, my name is Alejandro Caffarelli and I represent the plaintiff's appellant in this matter. To be clear from the outset, the plaintiffs here are not seeking to overturn Miller, which was a case analyzing preemption of biometrics claims under the Railway Labor Act. They are asking the court to clarify the scope of Miller, which differs both legally and factually from this case. The legal difference is that under the Labor Mandatory Subject to Bargaining, and as a result, the use of a biometric timekeeping system as opposed to, say, a punch card or an access code, is a rule that exists independent of collective bargaining and not preemptive. As we set out in our briefs, the language governing Mandatory Subjects to Bargaining differs between both the Railway Act and the Labor Management Act as set forth in 45 U.S.C. 152 in the case of the Railway Act and 29 U.S.C. Section 174A1 in the case of the Labor Management Act. The Railway Act refers to rates of pay, rules, and working conditions, and specifically says that the purpose of this is to avoid interrupting the operation of any character, in other words, baking the intent into the statute, whereas the Labor Act, as I said, only refers to rates of pay hours and working conditions. And as I said at the onset, existing authority, both the U.S. Circuit, citing the National Labor Relations Board itself, as cited in our briefs, have unanimously concluded that the specific mechanism for clocking in and out, whether it's a punch card or a biometric clock or what have you, does not constitute a Mandatory Subject to Bargaining because it doesn't implicate working conditions. And that distinction makes sense. The type of time clock an employee uses is conceivably a rule that needs to be followed but has no effect on the Labor Act topics of rates of pay, hours, or working conditions. It's clearly not a rate of pay. It's clearly not related to the number of hours an employee works. And it's clearly not a working condition. Work is what happens after you clock in and before you clock out. Defendants in the District Courts have been citing the Supreme Court decision in Hawaiian Airlines for the proposition that preemption analysis under the Railway Act and the Labor Management Act is virtually identical, but that wasn't the Court's holding. The unanimous holding of the Supreme Court in Hawaiian Airlines was that state law claims that exist independent of a collective bargaining agreement are not preempted. And in that case, it was a discharge where the bargaining agreement actually did address standards of conduct. So the preemption standard may be the same, but... I'm a little puzzled by this whole line of argument. Whether or not a particular subject is a mandatory topic of collective bargaining, it certainly is a permissive subject of collective bargaining because it affects the terms and conditions of employment. And if it's a permissive subject, that leaves the question whether the union has consented on behalf of the employees. Is there some objection to that, some obstacle to that way of looking at things? Well, no, Your Honor, but the ability to bargain over a topic is not a sufficient basis for preemption. That then swallows the rule and preemption jurisprudence that's developed over the past 30 years. Unions can bargain about anything they want to with employers. They can bargain about what kind of color shirt somebody needs to wear in the workplace. Exactly. And if the collective bargaining agreement covers some issue, then the dispute has to be resolved between the union and the employer. The employee can't demand individual resolution, can't demand something separate from the collective bargaining agreement. And that's that's what's bugging me. That's why I don't understand why your argument is significant. Well, that's it. You said it exactly, Judge. If the collective bargaining agreement covers an issue and we we we take the position that in this case, the collective bargaining agreement doesn't cover anything about biometrics in order to be preempted, the state law claim has to require interpretation of some provision of that agreement. And all we have here is a management rights clause that says, well, anything that's not discussed in this agreement, management is free to do whatever it wants to do. So in other words, it's as if there weren't a union. And to take a management rights clause that says management can do whatever it wants to do. Counsel, I think you're you're misunderstanding both what a management rights clause does and the holding in Miller. It's not that the employer is free to do anything it could as if there were no union. It's free to do whatever the union has consented through the scope of the management rights clause. And if there's a dispute about what that is, it's supposed to be resolved by an arbitrator, unless this is a very unusual collective bargaining agreement. Right. But the the management rights clause here says absolutely nothing. It doesn't go through. That's exactly what the plaintiffs were saying in Miller. And the employer said, no, that misunderstands what our management rights clause does. And Miller said, OK, we've got a dispute about this clause. It needs to go to under the Railway Labor Act and Adjustment Board. And here it sounds like it needs to go to an arbitrator. Well, I, I, I failed to see how there can be a dispute over the clause. OK, well, then you're just disagreeing with Miller. You think Miller should have come out the other way. Well, I understand that. But Miller came out the way it did come out. Well, I would, you know, Miller, I would say that the analysis that should be used is the analysis in Lingle. And Miller distinguished Lingle on two bases, only two bases that I could read in the decision. Number one, that that Miller. Mr. Caffarelli, while time remains, let me ask you a question of fact. Has the union demanded arbitration about the meaning of this management rights clause? Not that I know where you are. I ask that because your reply brief says, well, you should send this to arbitration. I don't see how we can send a case to arbitration at the request of an employee as opposed to the union. If the union has demanded arbitration, that's one thing. But if it's just the employees wanting arbitration, I don't see how you can bypass the union. Right. Well, we're not asking to. I guess I should clarify what we're asking for. We're asking to stay the case pending arbitration if there is an arbitration. And you're right, it is the prerogative of the union to send it to arbitration. But but my my point is that if if Miller was distinguishable from Lingle only on the basis that it was a mandatory subject of bargaining and that it involved a collective group of employees, if it isn't a mandatory subject of bargaining under the Labor Act, that just leaves collective action. And so, in effect, the court would be creating a rule that all class actions are preempted by the board, which I don't I don't know where that where the authority for that would lie. I think that the mandatory subject, the fact that it's a mandatory subject of bargaining under the R.L.A. and not under the Labor Act is a distinction that that has a significance because if it's not mandatory, you can't infer consent into the act. I'll reserve my time because I do want to address some of these issues on rebuttal. That's fine. Ms. Hines. Yes. May it please the court. Erin Bowen Hines on behalf of Cary Incorporated. This case turns on the labor dispute between an employer and union represented employees over the implementation of a time clock that uses finger scan technology. The issue in the case is whether the employer's implementation of this timekeeping system is a topic of collective bargaining that is covered by federal law. This issue was answered in Miller v. Southwest Airlines. The facts here are analogous to Miller. There's a collective bargaining agreement with a virtually identical management rights clause. There are union represented employees whose union have negotiated terms and conditions of employment covered by a collective bargaining agreement. And we have an employer subject to a virtually identical federal law that implemented the timekeeping system as part of its management functions under that management rights clause. This court also held in a very factually analogous case that the answer to whether the Labor Management Relations Act applies here flows directly from Miller and that was in Fox v. Dakota. In Miller, the court held that the employer's implementation of the same finger scan technology time clock was preempted by federal labor law. The only distinction and the employees' claims under the Illinois Biometric Information Privacy Act were preempted. The only distinction between Miller and this case is the application of the Labor Management Relations Act instead of the Railroad Labor Act. But it is a distinction without a difference. And this was recognized in Hawaiian Airlines v. Norris. The court not only found that the standard for the Railroad Labor Act for preemption is virtually identical to that courts employ when addressing cases under Section 301 of the Labor Management Relations Act. It did also recognize that the two statutes are not absolutely identical but they have common purposes. They have the preemption law has developed contemporaneously and there is an interest in common federal preemption law and which supports the virtually identical standard that was set in that case. Again in Fox v. Dakota, this court strongly suggested Miller's holding regarding the Railroad Labor Act applies to analogous facts under the Labor Management Relations Act. Therefore, this case requires a straightforward application of Miller's principles and holding. Miller also found that how workers clock in and out of work is a proper subject of bargaining between an employer and a union and indeed is a mandatory subject of bargaining and therefore it's covered by the collective bargaining agreement. Miller addressed that biometric information may raise concerns over workers' privacy. However, that subject is not covered by collective bargaining agreements and for which unions consent to on behalf of the whole bargaining unit. The Miller court expressly rejected the plaintiff's argument that the union cannot consent under the Illinois Biometric Information Privacy Act as the legally authorized representative. Miller addressed what an independent claim would be where it wouldn't fall under the federal scope and that would be claims that concern different treatment for different workers. Here, as in Miller, the plaintiffs have asserted a right in common with all other employees which is the timekeeping which is distinct from person-specific concerns claims such as retaliatory discharge. Claims under the Illinois Biometric Information Privacy Act are not person-specific. They're common to all workers and they can be negotiated beforehand. Miller also held that a state cannot remove a topic from bargaining from the union's purview to allow an individual to negotiate directly with management and importantly here the Illinois Biometric Information Privacy Act does not remove privacy rights from the union's delegated scope. It actually allows a legally authorized representative to receive notice and to consent to the collection of the biometric information accordingly or held whether the union did consent or granted authority through the Management Rights Clause is the question that needs to go to the Adjustment Board. Similarly, Miller held that retention and destruction schedules and whether a third party can be used. Yes. Do you agree with Mr. Caffarelli that the union has not demanded arbitration? I don't believe that they have demanded arbitration. Okay, one more question. A very few collective bargaining agreements permit employees to demand arbitration without the union's approval. Is this agreement one of them? No, I don't believe so, Your Honor. I'd have to verify that. It's in the record. Okay, thank you. And so for these reasons, and in Miller, the entire dispute has to go to the Adjustment Board and it so should adhere. The Labor-Management Relations Act also preempts the entire action completely, so there are no remaining claims for this court to assert jurisdiction. And as a result, there is no way for this court to enter an order for anything to stay for arbitration contrary to Plaintiff's position. And Plaintiff's argument is trying to overturn Miller as one of its basics, which is an extraordinary remedy. And Plaintiffs have failed to identify how this case meaningfully differs from Miller with a similar, almost identical, management rights clause and the claims are the same. And for these reasons, we ask that this court dismissal of Plaintiff's claims. All right, thank you. Mr. Caporelli. Thank you, Your Honor. I would like to point out a factual difference between this case and Miller, which I believe is material and substantive, and that is in this case, we only seek remedies under 15b of the statute, whereas under Miller, the Plaintiffs sought remedies under Section 15b and 15d of the statute. And that's important because 15d allows an authorized representative to consent on behalf of the person whose biometrics is the most significant, whereas 15b is different in that it requires not just consent, but an informed written release signed by the employee. And the written release is in the language of 15, I think it's b3, where it says a written authorization is required. Written authorization is defined in Section 10 of the statute as a term of art that specifically says, if I can pull up the language in here, in the context of employment, it must be signed by an employee. So we have nothing, we're not bringing any claims under this statute under which a union could simply consent to these claims. And if it's a waiver, we have a whole different analysis because the only way the management rights clause could be interpreted here is as a waiver to be able to bring these claims, and waivers are not permissible. You can't waive state rights through a collective bargaining agreement. And if you do the extent it is a waiver, it needs to be clear and unmistakable, which obviously we don't have the clear and unmistakable language here. So I've used up my time as I can see, Your Honors. I ask that you look at the legal differences as well as the factual differences in this case and clarify the scope of Miller and reverse the case report decision. Thank you very much, and thanks to both counsels.